CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUL 24 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| DARLENE MILLER, | ) | CASE NO. 5:11CV00055 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's May 23, 2008 protectively-filed application for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated February 23, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since December 31, 2007, her alleged date of disability onset.[1] (R. 14.) The Law Judge determined plaintiff's degenerative

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she

1

disc disease in the lumbar and cervical spine and fibromyalgia were severe impairments. (R. 14-18.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 18.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range sedentary work with several limitations.[2] (R. 18-20.)

The Law Judge relied on portions of the testimony of Robert Jackson, a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 20-22, 56-63.) Based on this testimony, the Law Judge determined that plaintiff was unable to perform her past relevant work as a certified nursing assistant or patient access specialist, but that a significant number of alternate jobs existed in the national economy which could be performed by a person with plaintiff's RFC. (R. 20-22.) Accordingly, the Law Judge found plaintiff was not disabled under the Act. (R. 22.)

Plaintiff appealed the Law Judge's February 23, 2010 decision to the Appeals Council. (R. 1-8.) In its April 28, 2011 decision, the Appeals Council considered the additional evidence filed by plaintiff on appeal but found no basis to review the Law Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant.

---

became disabled prior to the expiration of her insured status, which is December 31, 2013. *See* 20 C.F.R. § 404.131(a); (R. 14.)

[2] Sedentary work is defined in 20 C.F.R. § 404.1567(a) as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. The Law Judge included the additional limitations that plaintiff needs the option to sit or stand at her discretion, can only occasionally perform postural activities, and cannot climb ropes, ladders, or scaffolds. He also limited her to simple and unskilled work. (R. 18.)

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff asserts that the Law Judge erroneously assessed both her residual functional capacity and her subjective complaints. (Dkt. No. 16, at 5, 11.) The undersigned will address those challenges in the order asserted.

Plaintiff filed additional evidence while on appeal to the Appeals Council. (R. 5, 805-892.) The Appeals Council must consider additional evidence if it is: (a) new, (b) material, and (c) relates to the period on or before the date of the Law Judge's decision. *Wilkins v. Secretary*, 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative, and it is material if there is a reasonable possibility that the new evidence would have changed the outcome. *Id.* Here, the majority of the additional evidence is duplicative or cumulative of documents that were already in the record. Additional treatment notes from Darlinda M. Grice,

3

M.D., from April 22, 2010 through September 22, 2010 and Richard Whitehall, M.D., from May 11, 2010 through June 2, 2010 postdate the Law Judge's decision and do not relate to the relevant period of the case. (R. 817-822, 835-837.) However, Dr. Grice's February 16, 2010 report is new and material, because it describes an important change in plaintiff's treatment, and it concerns plaintiff's status during the relevant period. (R. 815-816.) Accordingly, it is new evidence which will be considered by the undersigned along with the rest of the record in determining whether the Commissioner's findings are supported by substantial evidence.

In determining a claimant's residual functional capacity, the Law Judge is not required to discuss every bit of evidence in the record or give credence to all of plaintiff's asserted impairments and limitations, but he must sufficiently articulate his findings and conclusions to permit meaningful judicial review. *Deloatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *Piney Mountain Coal v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999). Here, the Law Judge discussed in detail plaintiff's impairments, medical history, and the opinions of record. (R. 14-20.) Though he did not specifically detail what effect each of plaintiff's impairments had on his RFC finding, his questions to the VE clearly demonstrate that he was taking the effects of her impairments into account when making his determination of plaintiff's RFC. (R. 21, 56-63.) Furthermore, the fact that the Law Judge's RFC determination limited plaintiff to unskilled sedentary work with a sit/stand option and limitations on postural activities shows that he took into account both plaintiff's degenerative disc disease and the evidence that plaintiff's treatment had been at least partially successful in controlling her symptoms. (R. 18.) Accordingly, the undersigned can deduce from the Law Judge's decision what he actually considered, thus making meaningful judicial review possible.

4

The undersigned believes that the Law Judge properly relied on the expert opinions of record. He was correct to find that, in May 2008, Dr. Whitehall cleared plaintiff to return to work. (R. 301.) While Dr. Whitehall's statement that, "I am going to allow her (plaintiff) to return to work on June 1st, 2008, full time," is not a specific and detailed assessment of plaintiff's functional abilities, it does suggest that plaintiff's treating physician was of the opinion that her impairments did not prevent her from returning to her past work. (R. 301.) The Law Judge also considered and relied on the opinions of the agency medical consultants. (R. 20.) Notably, the Law Judge ultimately gave more weight to plaintiff's testimony and Dr. Whitehall's views by finding that she was more limited than the agency consultants opined. (R. 20, 67-78, 519-538.)

Moreover, as the Law Judge found, the objective evidence of record, including Dr. Whitehall's treatment notes, supports the Commissioner's decision. Dr. Whitehall indicated that plaintiff's x-rays looked "excellent" and her CT myelogram showed no abnormalities.[3] (R. 292, 294, 298, 421, 516-518.) He also indicated that plaintiff's EMG and nerve conduction velocity studies were normal. (R. 699.) Dr. Whitehall did find evidence in plaintiff's x-rays and MRI that she suffered degenerative disc disease and disc bulges, but he never recommended surgery or a notable change in her treatment. (R. 699, 708-709.) Instead, on August 4, 2008, he referred plaintiff to a chronic pain clinic with instructions to follow up with him on an as needed basis. (R. 421.) Interestingly, plaintiff did not return for treatment by Dr. Whitehall until September 9, 2009, more than a year later. (R. 709.) On February 26, 2009, Justin L. Nolen, PA-C, also expressed uncertainty as to the exact reason for plaintiff's complaint of continued significant low

---

[3] The July 15, 2008 CT myelogram showed L5-S1 mild to moderate neuroforaminal stenosis. (R. 516-517.)

5

back and bilateral leg pain, pointing out that her most recent MRI did not demonstrate any pathology for the pain. (R. 711.)

There also is substantial evidence supporting the Law Judge's finding that plaintiff's pain management treatment was at least partially successful in controlling her symptoms. Plaintiff's treatment at the UVA Pain Management Center was a mixed bag. She consistently described her pain intensity as a 7 to 8 out of 10 and noted difficulty in finding an effective pain medication that did not also have unacceptable side effects. Several SI joint injections from August through November 2009 provided moderate to complete pain relief and moderate improvement in function, but these effects did not last for more than a couple weeks at a time. (R. 426-434, 488-491, 617.) Lynn R. Kohan, M.D., noted that the SI joint injections were not providing long lasting relief. (R. 433.) The record reflects that a fluro-guided lumbar medial branch block procedure on November 6, 2008 actually increased plaintiff's pain, though it is noteworthy that plaintiff terminated the procedure before it could finish, refused additional medication, and promptly ended treatment at the UVA Pain Management Center. (R. 490.)

Plaintiff's pain management improved markedly on September 1, 2009 when she began treatment at the Augusta Health Pain Management Clinic. (R. 545.) Dr. Grice indicated that plaintiff presented complaining that her pain was intractable, that she had failed surgical and conservative management of her back problem, and that hydrocodone reduced her pain by 70% but only for one or two hours. (R. 546-547.) Dr. Grice also indicated that plaintiff had lost nearly all mobility of her spine and had very poor tolerance for sitting even while under examination. (R. 547.) Dr. Grice prescribed methadone, and, on September 30, 2009, noted it "has been working very well for (plaintiff)," and that plaintiff had experienced "dramatic relief of pain." (R. 542-543.) Dr. Grice indicated that plaintiff had no side effects related to her pain

6

medication and that her pain had been reduced by 80%. (R. 542.) Three months later, Dr. Grice reported that plaintiff's condition was stable, and that she was receiving significant pain relief from her medications. (R. 577-578.)

Plaintiff's additional evidence filed while on administrative appeal shows that, on February 16, 2010, Dr. Grice noted that plaintiff was no longer taking methadone because it produced unacceptable side effects. (R. 564, 815.) Dr. Grice indicated that plaintiff had no new symptoms, but her pain relief had been reduced to 40%, and she was "depressed about her chronic pain, crying because she is in a lot more pain." (R. 815.) Plaintiff was prescribed Dilaudid and was scheduled to see Dr. Grice again in 12 weeks. (R. 815-816.) It is evident that, after being taken off Methadone, plaintiff failed to get as much pain relief and was depressed because of that. However, plaintiff had been experiencing excellent pain relief for months up to that point, which was near the end of the relevant period, and she was getting substantial pain relief from her other medications. *Id.* Clearly this may be considered an episode of decompensation, yet it does not erode the substantial evidentiary support for the Law Judge's finding that plaintiff was receiving good pain relief.

While the undersigned may have given more weight to plaintiff's evidence than did the Law Judge, his determination of credibility is supported by substantial evidence. The Law Judge found that plaintiff's daily activities were consistent with an ability to perform at least entry level unskilled sedentary work full time. (R. 20.) The Law Judge cited such activities as taking care of her pets, not needing special reminders to take care of her personal needs and grooming, not needing encouragement to do housework including laundry, driving a car when not on pain medication, using a telephone and computer, and shopping in stores for 20 to 30 minutes at a time in support of his findings. (R. 20.)

7

It is true that minimal, transitory, and inconsistent aspects of daily living may have little or no bearing on a claimant's ability to function full time in a work setting. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). Moreover, possessing basic life skills, and being able to live independently, are not reliable indicia of a person's ability to perform substantial gainful activity. *Totten v. Califano*, 624 F.2d 10, 11-12 (4th Cir. 1980); *Ludden v. Bowen*, 888 F.2d 1246, 1248 (8th Cir. 1989). Here, however, the Law Judge considered more than plaintiff's daily activities in determining her credibility. He discussed plaintiff's treatment history and medication record, noted that plaintiff experienced pain relief from SI join injections and Methadone and found that her treatment was "at least partially successful in controlling her symptoms." (R. 19.) He relied on Dr. Whitehall's evidence that, notwithstanding her ongoing pain, plaintiff had been cleared to return to her past work. (R. 19.) The Law Judge also considered plaintiff's testimony and, in fact, found her more limited than the state agency experts had opined. (R. 19-20.) Again, while the undersigned may have given more weight to plaintiff's testimony, there is substantial evidence to support the Law Judge's finding that plaintiff's allegations regarding the intensity, persistence, and limiting effects of her pain were not entirely credible.

In the end, the undersigned views this as a close case. Though the Law Judge's decision may not be considered flawless, there is substantial evidence in the record to support his findings. Dr. Whitehall's treatment notes demonstrate that plaintiff's test results generally were unremarkable, and his treatment has been conservative. Plaintiff was receiving excellent pain relief while on Methadone. While she is no longer on that drug, the record shows that her current pain medications have stabilized and controlled some 40% of her pain. It is also

8

noteworthy that none of plaintiff's treating physicians have suggested that she is incapable of substantial gainful activity.[4]

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

7/24/12
Date

---

[4] Though Dr. Grice indicated that she would "support" plaintiff if plaintiff filed for disability, there is no such support in the record. It is noted that the statement was made after the first day of plaintiff's treatment at the Augusta Health Pain Management Clinic, when Dr. Grice had no longitudinal view of plaintiff's condition and its effects. (R. 547.) There is also a suggestion that Dr. Grice was relying on inaccurate historical evidence. She apparently believed that plaintiff continued to work and was scheduled for surgery, neither of which was true. (R. 547, 578.)

9